324 S.E.2d 142

**Sharon PARKER, Appellant,**

v.

**WCC and Eastern Associated Coal Corp., Appellees.**

**No. 16265.**

Supreme Court of Appeals of West Virginia.

Dec. 14, 1984.

---

C. Patrick Carrick, Fairmont, for appellant.

George D. Blizzard, II, Shaffer & Shaffer, Madison, for appellee.

NEELY, Justice:

This is an appeal from an order entered by the Workers' Compensation Appeal Board which affirmed the Commissioner's order rejecting appellant's application for dependent's benefits on the ground that she had failed to make a *prima facie* showing that her husband's death was due to occupational pneumoconiosis or that occupational pneumoconiosis was a major contributing factor in his death.

On 1 May 1980 appellant, Sharon Parker, filed an application for dependent's benefits alleging that her deceased husband's death was due to occupational pneumoconiosis. In support of her application Mrs. Parker attached her husband's death certificate which indicated that the immediate cause of death, which occurred on 21 December 1979, was cardiopulmonary arrest. An autopsy report also submitted with the application for benefits revealed a pathological diagnosis of, *inter alia,* "[f]ocal Emphysema and Atelectasis; Pulmonary Anthracosis Consistent with Coal Worker's Simple Pneumoconiosis."

On 1 September 1981 the Commissioner ruled that Mrs. Parker's application be rejected on the ground that no *prima facie* showing had been made that the employee's death was due to occupational pneumoconiosis or that occupational pneumoconio-

sis was a major contributing factor in his death. Mrs. Parker filed a timely protest but the order was affirmed. The Commissioner's ruling was then appealed to the Appeal Board which also affirmed. For the reasons set forth below, we reverse.

In her appeal to the Board, the appellant argued that she was entitled to the benefit of this Court's decision in *Godfrey v. State Workmen's Compensation Commissioner*, 166 W.Va. 644, 276 S.E.2d 802 (1981). In that case Raymond Godfrey filed an application for occupational pneumoconiosis benefits. Following a hearing held to adduce evidence on the non-medical questions relating to his period of exposure, the Commissioner ruled that the claimant had failed to make a *prima facie* showing that he had contracted occupational pneumoconiosis. The Appeal Board affirmed.

■ We reversed the Board's decision in *Godfrey* noting that the Commissioner had failed in his statutory duty which is, when a claim for occupational pneumoconiosis benefits is filed, to make the non-medical period of exposure determinations prescribed by *W.Va.Code*, 23–4–15b [1971]. "Then, if the claimant meets the exposure requirements, the Commissioner is required to refer the claim to the Occupational Pneumoconiosis Board for the medical evaluation prescribed in W.Va.Code, 23–4–8c." 166 W.Va. at 645, 276 S.E.2d at 803. The sole syllabus point of *Godfrey* clearly states this point:

> "Once the Commissioner has made the non-medical finding that there is a dust hazard, a pneumoconiosis claimant must be referred to the Occupational Pneumoconiosis Board to determine the question of causation under *Code*, 23–4–8c(c)(2), as amended." Syl. pt. 2, *Meadows v. State Workmen's Compensation Commissioner*, 157 W.Va. 140, 198 S.E.2d 137 (1973).

The employer argues, and the Appeal Board found, that *Godfrey* can be distinguished from the case *sub judice* in that *Godfrey* involved a living claimant while the case at bar stems from a dependent's claim. The appellant, Mrs. Parker, maintains that there is no valid or logical reason to make such distinction. We agree.

■ *W.Va.Code*, 23–4–15b [1971] lists certain *non-medical* determinations that must be made by the Commissioner and "vests in the Commissioner the discretion only to 'determine such other *nonmedical* facts as may in his opinion be pertinent.... (emphasis added).' " 166 W.Va. at 647, 276 S.E.2d at 804. There is no authority in this statute for the Commissioner to make a determination of a medical question upon an initial application of a claimant (employee) or a dependent. Nor can we find anything in any of the statutes dealing with occupational pneumoconiosis that empowers the Commissioner to make medical determinations on an initial application without medical advice from the Occupational Pneumoconiosis Board.

■ Clearly the Legislature did not intend to distinguish between the non-medical findings in a dependent's claim and the non-medical findings in a living employee's claim. We find no provision in the workers' compensation law that would cause a dependent's claim to be treated in a manner different from an employee's claim. Therefore, we conclude that *Godfrey v. State Workmen's Compensation Commissioner, supra,* does apply to the instant case and that in the case of a dependent's claim for occupational pneumoconiosis benefits the Commissioner must refer the claim to the Occupational Pneumoconiosis Board if the exposure requirements have been met.

The employer argues that a fatal claim such as the one before us should not be controlled by *Godfrey* principles because here one must show not only the existence of occupational pneumoconiosis, but must prove that the disease either caused the death or was a major contributing factor in it.

■ The purpose of referring a claim to the Occupational Pneumoconiosis Board is to give a claimant the benefit of the expertise of the members of the Board since initial applications often contain only the medical opinions of doctors who do not specialize in the complex field of occupational pneumoconiosis. *See Godfrey, supra.* To give a living employee the benefit of this expertise and proper medical evalua-

tion but to deprive a deceased employee's family of the same would be unjust as well as contrary to the beneficent purposes of the workers' compensation law.

■ We are of the view, therefore, that the Commissioner erred in failing to make the non-medical period of exposure determinations mandated by *Code*, 23–4–15b [1971] and in finding that the appellant had failed to establish a *prima facie* case for benefits.

Accordingly, the final order of the Workers' Compensation Appeal Board is reversed and the case is remanded to the Workers' Compensation Commissioner for further proceedings consistent with this opinion.

Reversed and remanded with directions.