410 S.E.2d 705

**Margaret A. NEWMAN, Eloise Sims and Helen Smigill, Petitioners,**

v.

**Andrew N. RICHARDSON, Workers' Compensation Commissioner, Respondent.**

No. 20206.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1991.

Decided Oct. 16, 1991.

Scott S. Segal, Jeffery V. Mehalic, Hostler and Segal, Charleston, for petitioners.

Mario Palumbo, Atty. Gen., C. Terry Owen, Sr. Asst. Atty. Gen., Charleston, for respondent.

NEELY, Justice:

Margaret A. Newman, Eloise J. Sims and Helen Smigill are all widows whose applications for dependents' benefits based on occupational pneumoconiosis were rejected by the Workers' Compensation Commissioner because their husbands' deaths were not caused by injuries or conditions received in the course of and resulting from employment. Although all widows filed administrative protests, they also petitioned this Court for a writ of mandamus to compel the Workers' Compensation Commissioner to refer their dependents' claims to the Occupational Pneumoconiosis Board for review. The widows allege that their husbands' deaths resulted from exposure to asbestos dust. The disease of "asbestosis" is included in the definition of "occupational pneumoconiosis" in *W.Va.Code* 23–4–1 [1989]. We find that the Workers' Compensation Commissioner exceeded his authority in issuing what amounted to medical rulings in these occupational pneumoconiosis claims, and we award the writ as molded.

## I

Generally all three claims present the same pattern, which includes: (1) asbestos dust exposure to the decedents and the submission of some exposure information to the Workers' Compensation Fund; (2) decedents' death certificates noting the cause of death as mesothelioma or other forms of cancer; (3) timely applications for dependent's benefits based on occupational pneumoconiosis; and, (4) rejection of the applications by the Commissioner on the grounds that the deaths were "not caused by an injury or occupational disease suffered by the decedent[s] in the course of and resulting from employment."[1] The Workers' Compensation Commissioner rejected the applications without consulting the Occupational Pneumoconiosis Board or, apparently, any other medical specialist.

1. *See infra* section II for a description of the individual cases.

2. *W.Va.Code*, 23–4–1 [1989], requires an employee to have been:

According to a 19 May 1990 policy memorandum of the Commissioner, claims involving mesothelioma and other cancers arising from occupational exposure to asbestos, are to be treated as "occupational diseases, and not as occupational pneumoconioses" and are not to be referred to the Occupational Pneumoconiosis Board.

*W.Va. Code*, 23–4–1 [1989], the statute providing coverage for occupational diseases, specifically provides a statutory definition for the term "occupational pneumoconiosis." For an occupational disease *other* than occupational pneumoconiosis, the statute establishes six criteria for determining when a claimant has an occupational disease. *W.Va. Code*, 23–4–1 [1989], provides the following definition of occupational pneumoconiosis:

Occupational pneumoconiosis is a disease of the lungs caused by the inhalation of minute particles of dust over a period of time due to causes and conditions arising out of and in the course of the employment. The term "occupational pneumoconiosis" shall include, but shall not be limited to, such diseases as silicosis, anthracosilicosis, coal worker's pneumoconiosis, commonly known as black lung or miner's asthma, silico-tuberculosis (silicosis accompanied by active tuberculosis of the lungs), coal worker's pneumoconiosis accompanied by active tuberculosis of the lungs, *asbestosis*, siderosis, anthrax and any and all other dust diseases of the lungs and conditions and diseases caused by occupational pneumoconiosis which are not specifically designated herein meeting the definition of occupational pneumoconiosis set forth in the immediately preceding sentence. [Emphasis added].

However, in order to be considered for compensation as a result of occupational pneumoconiosis the employee must have been exposed to the hazard in West Virginia for specific periods.[2]

... exposed to the hazards of occupational pneumoconiosis in the state of West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to such hazards, or for any five of the fifteen years

When a disease is not included under the definition of "occupational pneumoconiosis," the disease, to be considered "occupational," must meet the following criteria outlined in *W.Va. Code,* 23–4–1 [1989]:

... Except in the case of occupational pneumoconiosis, a disease shall be deemed to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of the employer and employee, and (6) that it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

*W.Va. Code,* 23–4–1 [1989], provides that, "[c]laims for occupational disease ... except for occupational pneumoconiosis, shall be processed in like manner as claims for all other personal injuries." Thus, the Workers' Compensation Commissioner is required to have a separate processing system for occupational pneumoconiosis claims; all other occupational disease claims follow the regular processing system.

The separate processing system for occupational pneumoconiosis claims begins with the Commissioner's determination of the

essential non-medical facts, namely the claimant's exposure for the required period. *W.Va. Code,* 23–4–15b [1990].[3] The Commissioner's determination of a claimant's exposure is important because exposure for the required period in West Virginia creates a presumption "that such claimant is suffering or such deceased employee was suffering at the time of his or her death from occupational pneumoconiosis which arose out of and in the course of his or her employment. This presumption shall not be conclusive." *W.Va. Code,* 23–4–8c (b) [1990].

■ Under *W.Va. Code,* 23–4–15b [1990], the Commissioner's initial determination is limited to non-medical facts in occupational pneumoconiosis claims. In *Parker v. Workers' Compensation Commissioner,* 174 W.Va. 181, 324 S.E.2d 142, 144 (1984), we examined the statute and concluded:

There is no authority in this statute for the Commissioner to make a determination of a medical question upon an initial application of a claimant (employee) or a dependent.

In *Parker,* we also found that no other statute "empowers the Commissioner to make medical determinations on an initial application without medical advice from the Occupational Pneumoconiosis Board." *Parker,* 174 W.Va. at 183, 324 S.E.2d at 144.

After the Commissioner determines that the exposure requirements in a claim for occupational pneumoconiosis have been met, "the Commissioner must refer the claim to the Occupational Pneumoconiosis Board...." *Parker,* 174 W.Va. at 183, 324 S.E.2d at 144; Syllabus, *Godfrey v. State Workmen's Compensation Commissioner,* 166 W.Va. 644, 276 S.E.2d 802 (1981); Syllabus Point 2, *Meadows v. State Workmen's Commissioner,* 157 W.Va. 140, 198 S.E.2d 137 (1973).

Because the Occupational Pneumoconiosis Board is composed of doctors who have

immediately preceding the date of such last exposure.

3. Although *W.Va.Code,* 23–4–15b, was amended in 1990 to include the administrative law judge system, the Commissioner's initial determina-

tion in occupational pneumoconiosis' claims is limited to exposure and "such other nonmedical facts as may in the commissioner's opinion be pertinent to a decision on the validity of the claim."

"by special study or experience, or both, acquired special knowledge of pulmonary diseases" (*W. Va. Code*, 23–4–8a, [1974]), the Board is to determine all medical questions in an occupational pneumoconiosis claim under the direction and supervision of the Commissioner. *Ferguson v. State Workmen's Compensation Commissioner*, 152 W.Va. 366, 163 S.E.2d 465 (1968).[4]

■ The processing system for a dependent's claim for occupational pneumoconiosis is the same as for a living employee's claim. In the Syllabus of *Parker, supra,* we said:

> In a proceeding brought by a dependent of a deceased employee under W.Va. Code, 23–4–15 [1973] for benefits arising from an occupational pneumoconiosis claim, once the Commissioner has made the nonmedical finding that the claimant's decedent was exposed to a dust hazard, the question of causation under Code, 23–4–8(c) [1978] must be referred to the Occupational Pneumoconiosis Board.

■ In the present cases, the Commissioner processed each of the dependent widows' claims as an occupational disease and not as occupational pneumoconiosis. The Commissioner argues that our holding in *Powell v. State Workmen's Compensation Commissioner*, 166 W.Va. 327, 273 S.E.2d 832 (1980), requires a claim based on exposure to asbestos dust to be processed as an occupational disease rather than occupational pneumoconiosis. *Powell*, however, makes no such processing requirement; *Powell* simply held that the exposure of Mr. Powell to asbestos resulted in an occupational disease, namely lung cancer. In *Powell*, the claim was processed as an occupational pneumoconiosis claim. After the Commissioner held that Mr. Powell's exposure met the requirements of the Act, the claim was referred to the Occupational Pneumoconiosis Board. The Board determined "that the employee's death was not due to occupational pneumoconiosis and that occupational pneumoconiosis was not a contributing factor in his death." Based on the Board's findings, the Commissioner and the Appeal Board rejected Mrs. Powell's claim.

In *Powell*, we then held that the Appeal Board was wrong in failing to recognize the clear "causal connection between exposure and the disease...." *Powell*, 166 W.Va. at 336, 273 S.E.2d at 837. In *Powell* we used the six criteria of *W. Va. Code*, 23–4–1, as the standard for determining causation, even though the criteria are used to determine the occupational nature of diseases other than occupational pneumoconiosis. *Powell*, 166 W.Va. at 334–36, 273 S.E.2d at 836–37. Our decision that the decedent's widow in *Powell* made a prima facie case showing that Mr. Powell's death was due to (or was contributed to) by an occupational disease did not change the statutory definition of occupational pneumoconiosis and did not affect the processing system for occupational pneumoconiosis claims.

■ When a claim for occupational pneumoconiosis alleging asbestosis or any other disease defined by *W. Va. Code*, 23–4–1 [1990], as occupational pneumoconiosis is filed, the Commissioner must follow the processing system for occupational pneumoconiosis claims and limit the initial determination to exposure and other non-medical facts as required by *W. Va. Code*, 23–4–15b [1990]. When a claim for an occupational disease is filed, the Commissioner is to follow the usual processing procedure for personal injury claims and, because an occupational disease is alleged, the Commissioner must apply the six criteria outlined in *W. Va. Code*, 23–4–1 [1990], to determine if the alleged disease was "incurred in the course of and resulting from employment."

## II

Although the records in all three cases show that the Commissioner failed to process the claims as occupational pneumoconiosis claims, the widow petitioners have not demonstrated an entitlement to an im-

**4.** *See, Bradford v. Workers' Compensation Commissioner,* 185 W.Va. 434, 408 S.E.2d 13 (1991), for a recent discussion of the degree of proof necessary to establish that a dead employee's occupational pneumoconiosis caused the employee's death.

mediate referral of their claims to the Occupational Pneumoconiosis Board. The records do not indicate if the Commissioner has made determinations of non-medical facts including the exposure of the decedents to the hazards of occupational pneumoconiosis for the required period under *W.Va.Code*, 23–4–15b [1990].

### A.

In the case of Mrs. Newman, her dependent's benefits claim was filed on 5 November 1990, alleging 31 January 1990 as Charles Newman's date of last exposure. Mr. Newman died on 28 May 1990 and his death certificate listed the immediate cause of death as "Respiratory failure," with "Malignant Mesothelioma–Peritoneum" listed as an underlying cause. However, the record indicates that Mr. Newman's exposure to asbestos dust occurred before 1975 when he worked in Ohio. Mr. Newman's medical records indicate a 40 year exposure to asbestos dust and treatment for lung cancer with mediastinal node involvement in 1987. By order dated 12 March 1991, the Commissioner denied Mrs. Newman's application for two reasons: (1) "the decedent's death was not caused by an injury or disease suffered in the course of and resulting from his employment ...;" and (2) "the decedent was not any employee subject to coverage within the meaning of the West Virginia Workers' Compensation Law." On 11 April 1991, Mrs. Newman filed an administrative protest to the Commissioner's order on both grounds.

The Commissioner alleges that Mr. Newman's exposure to asbestos occurred between 1942 and 1975 when Mr. Newman was a resident of Ohio and that he was awarded Social Security Disability benefits in 1975 apparently because of asbestosis. The Commissioner also alleges that the claim indicates no exposure to asbestos dust in West Virginia.

### B.

Mrs. Sims filed her application for dependent's benefits on 5 November 1990, alleging 21 February 1986 as Dale Sims, Jr.'s date of last exposure. Mr. Sims died on 18 May 1989, and his death certificate listed "Advance multiple myeloma" as the immediate cause of death with no underlying causes listed. Mrs. Sims' application included a list of Mr. Sims' employment from December 1978 through 21 February 1986. Mr. Sims' autopsy report noted that the lungs showed "bilateral Basal Acute Pneumonia" and "mild pleural fibrosis—lower lobes—bilateral." By order dated 17 April 1991, the Commissioner denied Mrs. Sims' application because "the death was not caused by an injury or an occupational disease suffered by the decedent in the course of and resulting from employment." On 7 May 1991, Mrs. Sims filed an administrative protest to the Commissioner's order.

The Commissioner maintains that the work history submitted shows Mr. Sims, a resident of Ohio, worked in at least five states and that his work history is inadequate to determine Mr. Sims' employment in West Virginia.

### C.

Mrs. Smigill, the final petitioner, filed an application for dependent's benefits after her husband's death on 17 April 1990. Mrs. Smigill's application indicated that Rudy Smigill's date of last exposure was 6 June 1978. Mr. Smigill's death certificate listed the immediate cause of death as "carcinoma of colon, [illegible]" with no underlying causes listed. According to the petition, Mr. Smigill, by order dated 1 February 1988, had been granted a 10% permanent partial disability award for occupational pneumoconiosis. By order dated 6 May 1991, the Commissioner denied Mrs. Smigill's application because "the death was not caused by an injury or an occupational disease suffered by the decedent in the course of and resulting from employment." On 7 May 1991, Mrs. Smigill filed an administrative protest to the Commissioner's order.

### D.

Based on these facts, the petitioners maintain that they are entitled to a writ of mandamus ordering the Commissioner in

the claim of Mrs. Newman, to set aside that portion of the rejection order based on causation and to proceed with litigation on the issues of eligibility, and in the claims of Mrs. Sims and Mrs. Smigill to set aside the rejection orders, to enter non-medical orders, and to refer those claims to the Occupational Pneumoconiosis Board for review. The petitioners also request the award of their attorneys' fees and costs incurred in prosecuting this writ.

■ In rejecting Mrs. Newman's claim, the Commissioner's order ruled on both medical and non-medical issues. The portion of the Commissioner's order addressing the medical issue of the cause of Mr. Newman's death is set aside, and the Commissioner is directed to treat Mrs. Newman's protest as an objection to the non-medical issue and to proceed as directed by *W.Va.Code*, 23–4–15b [1990] by conducting a hearing on the non-medical issue. Because *W.Va.Code*, 23–4–15b [1990] does not provide for referral to the Occupational Pneumoconiosis Board in the event of the claimant's objection,[5] we find that petitioner Newman has not demonstrated a clear legal right to have the Court direct her claim to the Occupational Pneumoconiosis Board.

■ The petitioners argue that because the Commissioner, in the claims of Mrs. Sims and Mrs. Smigill, failed to raise any non-medical issue, including exposure, the Commissioner should not be able to reject these claims for lack of exposure. The petitioners maintain that in issuing the rulings in the claims of Mrs. Sims and Mrs. Smigill, the Commissioner must have reviewed the claims to assure compliance with *W.Va.Code*, 23–4–15b [1990].

Although we agree that the petitioners are entitled to have the Commissioner process their claims as occupational pneumoconiosis claims, we do not find that petitioners Sims and Smigill have demonstrated a clear legal right to have the Commissioner enter orders holding that the exposure requirements have been met. We find, therefore, that petitioners Sims and Smigill have not demonstrated a clear legal right to have the Court direct their claims to the Occupational Pneumoconiosis Board.

Accordingly, we find that the Commissioner erred in failing to process these claims as occupational pneumoconiosis claims. Therefore, in the claim of Mrs. Newman, we order the Workers' Compensation Commissioner to set aside the portion of his order addressing the medical issue of causation and to treat Mrs. Newman's protest as an objection to the non-medical findings and to proceed as directed in *W.Va.Code*, 23–4–15b [1990]. In the claims of Mrs. Sims and Mrs. Smigill, we order the Workers' Compensation Commissioner to set aside the previous orders and to enter orders making the appropriate non-medical rulings, including the exposure determinations as mandated by *W.Va. Code*, 23–4–15b [1990] and to proceed as directed in *W.Va.Code*, 23–4–15b [1990]. Because petitioners have a statutory right to have their claims processed as occupational pneumoconiosis claims, we also order that the Commissioner pay the petitioners' reasonable attorney's fees and costs in

---

**5.** *W.Va.Code*, 23–4–15b [1990], provides in pertinent part:

Upon receipt of such objection, the commissioner shall set a hearing as provided in section one [§ 23–5–1], article five of this chapter or the chief administrative law judge shall set a hearing as provided in section one-h [§ 23–5–1h], article five of this chapter. In the event of an objection to such findings by the employer, the claim shall, notwithstanding the fact that one or more hearings may be held with respect to such objection, mature for reference to the occupational pneumoconiosis board with like effect as if the objection had not been filed. If the commissioner or administrative law judge concludes after the protest hearings that the claim should be dismissed, a final order of dismissal shall be entered, which final order shall be subject to appeal in accordance with the provisions of section one or section one-i and section three [§ 23–5–1 or § 23–5–1i and § 23–5–3], article five of this chapter. If the commissioner or administrative law judge concludes after such protest hearings that the claim should be referred to the occupational pneumoconiosis board for its review, the order entered shall be interlocutory only and may be appealed only in conjunction with an appeal from a final order with respect to the findings of the occupational pneumoconiosis board.

prosecuting this writ upon the submission of a detailed statement.

It is further adjudged and ordered that service of an attested copy of the opinion upon the respondent shall have the same force and effect as the service of a formal writ.

Writ Granted.