664 S.E.2d 761

**FENTON ART GLASS COMPANY,**
**Appellant,**

v.

**WEST VIRGINIA OFFICE OF the IN-SURANCE COMMISSIONER and**
**Jack L. Garrison, Appellees.**

No. 33673.

Supreme Court of Appeals of West Virginia.

Submitted April 2, 2008.

Decided June 26, 2008.

Ann B. Rembrandt, Esq., Jackson & Kelly, Charleston, WV, for the Appellant–Employer, Fenton Art Glass Company.

Thomas P. Maroney, Esq., Maroney, Williams, Weaver & Pancake, PLLC, Charleston, WV, for the Appellee–Claimant, Jack L. Garrison.

PER CURIAM.

This is an appeal by Fenton Art Glass Company (hereinafter "employer") from a final order of the Workers' Compensation Board of Review (hereinafter "BOR"), dated May 30, 2006, which affirmed an interlocutory order of the Workers' Compensation Office of Judges (hereinafter "OOJ") dated September 4, 2003, and which reversed and vacated the final order of the OOJ dated December 15, 2003. The BOR furthermore granted to the claimant, Jack L. Garrison (hereinafter "claimant"), a 5% permanent partial disability award for occupational pneumoconiosis.

The underlying September 4, 2003 interlocutory order of the OOJ affirmed the February 16, 1998, order of the Workers' Compensation Commission (hereinafter "Commission"), which held this claim compensable on a non-medical basis subject to the presumption of West Virginia Code § 23–4–8c(b) (2005),[1] with a date of last exposure of November 4, 1997. The underlying December 15, 2004, order of the OOJ affirmed the Commission's June 18, 1998, order which granted claimant no award for disability attributed to occupational pneumoconiosis. The employer contends that the BOR erred in affirming the OOJ on the non-medical issue and in reversing the OOJ and in granting claimant a 5% award, on the medical issue.

This Court has before it the petition for appeal of the employer, all matters of record, and the briefs and arguments of the employer and the claimant. For the reasons set forth below, the May 30, 2006, order of the BOR is affirmed, in part, reversed, in part, the granting of a 5% permanent partial disability award is vacated, and the matter is remanded with directions to reinstate the OOJ's June 18, 1998, which granted no award for occupational pneumoconiosis disability. That portion of the May 30, 2006, order of the BOR, which affirmed the September 4, 2003, interlocutory order of the OOJ on the nonmedical issue, is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The claimant, a glass plant worker for 32 years, filed this claim seeking benefits for

occupational pneumoconiosis[2] on November 4, 1997. Claimant worked at the Fenton Art Glass Company in Williamstown, West Virginia, for approximately one year between 1959 and 1960, and then again beginning in August 19, 1968. He continued working after filing this claim. In support of his application, claimant submitted the September 2, 1997, report of Maurice Bassali, M.D. (hereinafter "Dr. Bassali"), in which Dr. Bassali diagnosed claimant with occupational pneumoconiosis based upon his review of an x-ray dated July 29, 1997, from Parkersburg Radiology Services. Specifically, Dr. Bassali read claimant's x-ray film as showing diffuse chronic interstitial lung disease suggestive of occupational pneumoconiosis type q/t, profusion 1/1, affecting all six lung zones. Dr. Bassali further identified a right wall pleural plaque, width B, extent 3; and a left wall pleural plaque, width B, extent 1. Dr. Bassali classified his x-ray as being of good diagnostic quality # 1.

### A.

### Non–Medical Issue

By order of February 18, 1998, the Commission held the claim compensable on a non-medical basis, subject to the presumption of West Virginia Code § 23–4–8c(b),[3] and claimant was referred to the Occupational Pneumoconiosis Board for a medical evaluation. The employer protested this interlocutory non-medical order.

In support of his claim on the non-medical exposure issue, claimant testified that he was

1. *See, infra,* at footnote 3.

2. "Occupational pneumoconiosis is a disease of the lungs caused by the inhalation of minute particles of dust over a period of time due to causes and conditions arising out of and in the course of employment." W. Va.Code § 23–4–1(d) (2003).

3. This presumption is not conclusive. *See* W. Va.Code § 23–4–8c(b) (2005), which provides:

If it can be shown that the claimant or deceased employee has been exposed to the hazard of inhaling minute particles of dust in the course of and resulting from his or her employ-

ment for a period of ten years during the fifteen years immediately preceding the date of his or her last exposure to such hazard and that the claimant or deceased employee has sustained a chronic respiratory disability, it shall be presumed that the claimant is suffering or the deceased employee was suffering at the time of his or her death from occupational pneumoconiosis which arose out of and in the course of his or her employment. This presumption is not conclusive.

Although W. Va.Code § 23–4–8c has been amended since the relevant time period herein, subsection b remains unchanged. Therefore, the current version of this statutory provision is cited herein.

exposed to dust in the form of sand, soda ash, and other materials used in batch to make glass. He did not wear breathing protection. Asbestos was removed from the plant in the 1980's as part of an asbestos abatement program which concluded in November 1989. Although asbestos was no longer used in the plant, claimant testified that he had been exposed to asbestos dust at the plant earlier in his working career. Claimant testified that he continued working at the plant after he filed the instant claim.

The employer introduced two reports by Terrence Stobbe, Ph.D., CIH (hereinafter "Dr. Stobbe") Dr. Stobbe conducted surveys of the plant on November 23, 1998, and November 24, 1998, and again on two days in August 1999. Dr. Stobbe found that respirable dust levels, including silica, were well below any government or industrial hygiene standard in all areas of the plant. Dr. Stobbe concluded that there was no dust hazard at the plant. Dr. Stobbe also found no asbestos fibers present in the plant in either of his surveys. Dr. Stobbe admitted that his testing would not be relevant to the condition of the plant regarding the presence of asbestos at some time in the past, but might be relevant to the condition of respirable dust at some earlier period.

The employer introduced an affidavit from Michael D. Fenton, (hereinafter "Mr. Fenton") director of safety and environmental health for the employer since 1985. He began his employment at the plant in 1972. He stated that asbestos removal from the plant began in the 1980's and was completed by November 1989. He stated that since 1977, there had been no changes in operations, production procedures, or the use of equipment, which increased the employees' risk of exposure to a dust hazard.

The employer also introduced a report of Donald J. McGraw, M.D., MPH (hereinafter "Dr. McGraw"). Dr. McGraw conducted a walk-through tour of all departments in the plant and reviewed dust surveys and Dr. Stobbe's conclusions. He concluded that there was no respirable dust hazard or other risk of occupational respiratory disease at the employer's plant. Dr. McGraw testified that he believed his conclusions were valid

for conditions at earlier periods at the plant and that the testimony of employees about observing dust at the plant was not credible.

At a hearing held on May 21, 2003, the Occupational Pneumoconiosis Board (hereinafter "O.P. Board") found that the conclusions of Dr. McGraw and Dr. Stobbe regarding the condition of the plant prior to the time Dr. Stobbe conducted his surveys in the late–1990's to be unreliable in part on the grounds that no specific data had been introduced into the record to determine the accuracy of the reports. The O.P. Board also found that asbestos was present in the plant at least up to November 1989. Therefore, the O.P. Board concluded that claimant was exposed to the hazards of abnormal quantities of dust, as well as asbestos, in the course of and arising out of his employment at the employer's plant.

By order of September 4, 2003, the OOJ affirmed the Commission's interlocutory non-medical order of February 16, 1998. In that order, Deputy Chief Administrative Law Judge Henry Haslebacher (hereinafter "Judge Haslebacher") thoroughly reviewed the evidence of record on the non-medical exposure issue. Noting that despite putting a considerable amount of evidence into the record regarding the absence of a respirable dust hazard at the plant, the evidence was not conclusive as to all of the time during which claimant worked at the employer's plant. Because he found no verification for the conclusions offered by the employer's witnesses as to claimant's dust exposure, Judge Haslebacher found the conclusions of Dr. McGraw, Dr. Stobbe and Mr. Fenton to be unreliable. Judge Haslebacher cited the conclusions of the O.P. Board in this regard. Specifically, Judge Haslebacher found no actual industrial hygiene studies to document dust levels in the plant prior to 1998, when Dr. Stobbe performed the first of his two surveys. When combined with the testimony of claimant, the OOJ found a sufficient basis to affirm the Commission's February 16, 1998, non-medical order. The employer appealed this determination to the BOR.

By order of May 30, 2006, the BOR unanimously affirmed the OOJ's September 4, 2003, interlocutory order on the non-medical

issue in litigation. The BOR found that the evidence of record supported that claimant was exposed to the hazards of occupational pneumoconiosis from August 19, 1968 to November 4, 1997, when he filed his claim for benefits herein.

## B.

### Medical Issue

Claimant was examined by the O.P. Board on April 21, 1998. Claimant demonstrated mild wheezing throughout all of both lung fields at the time of his examination. The wheezing persisted after exercise. The O.P. Board made no diagnosis of occupational pneumoconiosis. The O.P. Board diagnosed non-occupational subpleural fat bilaterally.[4] Claimant gave a history of shortness of breath for ten years, and a history of smoking for 37 years, quitting five years earlier. Based upon its physical examination, claimant's history, claimant's pulmonary function testing and its review of claimant's radiographic testing, the O.P. Board concluded that claimant did not suffer from occupational pneumoconiosis and that he had no pulmonary impairment attributed to his occupation. Based upon the conclusions and recommendations of the O.P. Board, the Commission issued an order, dated June 18, 1998, which granted no award for occupational pneumoconiosis. Claimant protested this medical order.

In support of his protest, claimant introduced re-reads of the O.P. Board's x-rays by Dominic Gaziano, M.D. (hereinafter "Dr. Gaziano"), and by Edward Aycoth, M.D. (hereinafter "Dr. Aycoth"). Dr. Gaziano found the O.P. Board's x-rays to be of grade 1 quality. He read the x-rays as showing parenchymal abnormalities consistent with pneumoconiosis consisting of q/t opacities in all six lung zones in a profusion of 1/0. He found no pleural abnormalities. Dr. Aycoth found the O.P. Board's x-rays to be of grade 1 quality. He read the x-rays as showing scattered rounded p/p opacities measuring up to 1.5 millimeters in diameter in all six lung zones in a

profusion of 1/0. Dr. Aycoth also diagnosed diffuse Grade A pleural thickening along the right and left lateral chest walls measuring up to 5 millimeters in width. He made no mention of subpleural fat.

The employer introduced re-reads of both the Parkersburg Radiology Services chest x-ray and the O.P. Board chest x-rays. John Willis, M.D. (hereinafter "Dr. Willis"), classified both sets of films as grade 2, with slight over-exposure. Dr. Willis concluded that there was insufficient parenchymal abnormalities to suggest pneumoconiosis. He also diagnosed subpleural fat bilaterally, with no pleural plaques and no pleural thickening identified. James T. Smith, M.D., (hereinafter "Dr. Smith") classified both films as grade 1. As with Dr. Willis, Dr. Smith made no diagnosis of pneumoconiosis. He also diagnosed bilateral, symmetrical subpleural fat with no pleural abnormalities suggestive of an occupational lung disease. David A. Sparks, M.D. (hereinafter "Dr. Sparks") classified the O.P. Board's films as grade 2, with overexposure, and the Parkersburg Radiology Services films as grade 1. Dr. Sparks concluded that a diagnosis of occupational pneumoconiosis could not be made based upon the chest x-rays reviewed. He also diagnosed a mild amount of subpleural fact bilaterally, with no other pleural or parenchymal abnormalities.

The O.P. Board gave testimony on the medical issue at a final hearing held on November 10, 2004. Testimony was first taken of the O.P. Board's radiologist, Johnsey L. Leef, Jr., M.D. (hereinafter "Dr. Leef").[5] Dr. Leef posted all chest x-ray films at issue on an x-ray view box and made reference to the films while testifying. He specifically was asked to physically look for the changes allegedly observed by Drs. Aycoth, Bassali and Gaziano on the films. In making specific reference to the films, Dr. Leef concluded that the alleged changes referenced were physically not present. He also noted that Drs. Aycoth, Bassali and Gaziano did not have the benefit of reviewing all of the chest

---

4. The examination showed claimant was 71 inches tall and weighed 252 pounds.

5. The O.P. Board's other radiologist, Thomas M. Hayes, M.D., participated in the O.P. Board's examination of claimant. He did not diagnose occupational pneumoconiosis.

x-rays of record, but that Drs. Willis, Sparks and Smith, as well as he, himself, had the opportunity to view both sets of x-rays. Dr. Leef testified that it is good practice to review as many x-rays as possible in considering a diagnosis. Having reviewed the reports of Drs. Aycoth, Bassali and Gaziano against the actual chest x-ray films of record, Dr. Leef made a finding of medical fact to the effect that the conclusions of Drs. Willis, Sparks and Smith were reliable, and the conclusions of Drs. Aycoth, Bassali and Gaziano were unreliable based upon the finding that the alleged changes noted in their reports as supporting their purported diagnoses were physically not present on the films.

Testimony was also obtained from James H. Walker, M.D. (hereinafter "Dr. Walker"), Chairman of the O.P. Board, and Jack L. Kinder, Jr., M.D. (hereinafter "Dr. Kinder"), member of the O.P. Board. Neither physician member of the O.P. Board diagnosed occupational pneumoconiosis and both agreed with the conclusions of Dr. Leef. Furthermore, both Dr. Walker and Dr. Kinder concluded that, to a reasonable degree of medical certainty, claimant had no pulmonary impairment attributable to an occupational factor. Dr. Walker specifically identified claimant's wheezing as being consistent with non-occupational bronchospastic disease. He attributed this wheezing to claimant's 37-year tobacco usage. Dr. Kinder agreed with Dr. Walker's conclusions.

By order of December 15, 2004, the OOJ affirmed the Commission's June 18, 1998, order, which granted no award for occupational pneumoconiosis to claimant. In this order, Judge Haslebacher thoroughly reviewed all evidence of record on the medical issue. Based upon the findings of the O.P. Board and the lack of objective correlation at hearing for the purported diagnoses of Drs. Bassali, Aycoth and Gaziano, the conclusions of such physicians were found to be incorrect and unreliable. Judge Haslebacher further noted the mutual inconsistencies present when the conclusions of Drs. Bassali, Aycoth and Gaziano were compared. He observed that one could only wonder if these physicians were looking at the same individual. Judge Haslebacher further noted that the reports of Drs. Sparks, Smith and Willis were consistent not only with each other, but also with the findings of the O.P. Board. Claimant appealed this order to the BOR.

By order of May 30, 2006, the BOR reversed the December 15, 2004, order of the OOJ, and granted claimant a 5% award for the diagnosis of occupational pneumoconiosis with no pulmonary impairment.[6] In its order, the BOR concluded that the analysis and conclusions of the OOJ were clearly wrong in view of the reliable, probative and substantial evidence of record. In so doing, the BOR stated that the OOJ had no substantiation for its conclusion that the conclusions of Drs. Bassali, Aycoth and Gaziano were unreliable. Judge Rita Hedrick–Helmick (hereinafter "Judge Hedrick–Helmick") dissented to the reversal of the December 15, 2004, OOJ order, and the granting of a 5% permanent partial disability award. Citing West Virginia Code, § 23–4–6a, Judge Hedrick–Helmick concluded that nothing in the record showed the O.P. Board or the OOJ to be clearly wrong.

## II.

### STANDARD OF REVIEW

This appeal primarily involves consideration of whether the BOR properly followed its standard of review in affirming the OOJ on the non-medical issue, and in reversing the OOJ on the medical issue. We therefore consider not only the standard of review

---

6. For claimants whose awards were granted before July 1, 2003, W. Va.Code § 23–4–6a (1995) provided that a claimant who received a diagnosis of occupational pneumoconiosis, but without measurable pulmonary impairment attributable to an occupational lung disease, would be awarded a 5% award. Entitlement to such a 5% award for a diagnosis of occupational pneumoconiosis without impairment was eliminated by amendments to W. Va.Code § 23–4–6a (2003), effective July 1, 2003. See Wampler Foods, Inc. v. Workers' Compensation Div., 216 W.Va. 129, 140, 602 S.E.2d 805, 816 (2004). Because the medical order of the Commissioner which is ultimately at issue herein was entered on June 18, 1998, long before the 2003 Amendments, claimant would be entitled to a 5% award if he were able to demonstrate a positive diagnosis of occupational pneumoconiosis regardless of the presence of pulmonary impairment.

applicable to our review of the issues raised herein, but necessarily also the standard of review applicable to the BOR for its review of the said issues.

West Virginia Code § 23-5-15(c) (2005) provides the following standard of review for appeals from the BOR where the BOR affirmed a prior ruling by both the Commission and the OOJ:

> If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

For cases in which the BOR reversed a prior ruling of either the OOJ or the Commission, West Virginia Code § 23-5-15(d) (2005) provides the following standard of review for appeals of such rulings:

> If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision.

■ Because our consideration of the issues before us necessarily requires us to consider the standard of review of the BOR, we observe that "[w]hen the [BOR] reviews a ruling from the [OOJ,] it must do so under the standard of review set out in W. Va.Code § 23-5-12(b) (1995), and failure to do so will be reversible error." Syl. Pt. 6, *Conley v. Workers' Compensation Div.*, 199 W. Va. 196, 483 S.E.2d 542 (1997). West Virginia Code § 23-5-12(b) (1995), directs, in relevant part, that

> The [BOR] may affirm the order or decision of the [OOJ] or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the [OOJ] if the substantial rights of the petitioner or petitioners have been prejudiced because the [OOJ]'s findings are:
>
> (1) In violation of statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the [OOJ]; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

With due consideration and regard for these standards, we consider the nonmedical and medical issues raised on appeal by the employer.

### III.

### DISCUSSION

On appeal, we consider both non-medical exposure and medical diagnosis and disability award issues raised by the employer, Fenton Art Glass Company. The employer initially contends that the Commission erred in finding the claim compensable on a nonmedical basis because, according to the employer, claimant was not exposed to the hazards of occupational pneumoconiosis for the requisite time period required by W. Va.Code § 23-4-15b (1995). The employer further contends that the BOR erred in reversing the OOJ, and in granting claimant a 5% award for a diagnosis of occupational pneumoconiosis without pulmonary impairment. We proceed with our consideration of each issue.

### A.

### The Non–Medical Exposure Issue

■ On appeal, the employer argues that claimant failed to show that he was exposed

to sufficient respirable harmful dust during his long employment with the employer to constitute an exposure to the hazards of occupational pneumoconiosis. In support of its contention, the employer relies on two surveys conducted by Dr. Stobbe and the opinions of Dr. Stobbe, Dr. McGraw and Mr. Fenton, the plant's safety director. The employer submits that the claimant's burden to show a dust hazard was improperly shifted to the employer and that the rulings below improperly had the effect of creating a presumption of exposure to the hazards of occupational pneumoconiosis. We disagree.

When an employee files a claim seeking occupational pneumoconiosis benefits under West Virginia's workers' compensation law, the initial determination of exposure, *i.e.*, the non-medical question, is determined by the Commission. *See* W. Va.Code § 23–4–15b (1995). Among other things,[7] in determining compensability of the claim, the Commission is required to

> determine whether in the State of West Virginia the claimant was exposed to [the hazards of occupational pneumoconiosis] over a continuous period of not less than two years during the ten years immediately preceding the date of his or her last exposure to the hazard and whether the claimant was exposed to the hazard over a period of not less than ten years during the fifteen years immediately preceding the date of his or her last exposure to the hazard.

W. Va.Code § 23–4–15b (1995). In support of his claim, the claimant testified that he was exposed to visible dust in the workplace.[8]

 " 'In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings.' Syllabus Point 1, *Thomas v. Firestone Tire & Rubber Co.*, 164 W.Va. 763, 266 S.E.2d 905 (1980)." Syl. pt. 3, *Hodge v. Ginsberg*, 172 W.Va. 17, 303 S.E.2d

245 (1983). In *Meadows v. Workmen's Compensation Commissioner*, 157 W.Va. 140, 198 S.E.2d 137 (1973), we defined the term "hazard" as it relates to occupational pneumoconiosis. We concluded that "[i]n a claim for occupation pneumoconiosis under the Workmen's Compensation Law, a 'hazard,' as contemplated by *Code*, 23–4–1, as amended, exists in any work environment where it can be demonstration that there are minute particles of dust in abnormal quantities." Syl. pt. 1, *Meadows*, 157 W.Va. 140, 198 S.E.2d 137. Resolution of the non-medical question presented in the instant case simply requires a determination of whether the BOR and the OOJ properly considered the facts before them within the ordinary and accepted meaning of "hazard" as we set forth in *Meadows*. We believe they did.

 Judge Haslebacher's order reflects a thorough consideration of all of the evidence on the non-medical issue. Specifically, Judge Haslebacher reviewed not only the evidence submitted by the employer, but also the testimony and opinions of the learned members of the O.P. Board with respect to the employer's evidence. Our review of the testimony of the O.P. Board confirms Judge Haslebacher's conclusions. We observe that the O.P. Board is not only a board comprised of experts in the field of occupational pneumoconiosis, but also that the O.P. Board's members are presumptively impartial. Accordingly, we believe that great deference should be given to the conclusions of the O.P. Board not only on medical, but also on exposure issues, related to the disease known as occupational pneumoconiosis.

Furthermore, Judge Haslebacher considered not only testimony regarding visible dust in the workplace, but also the fact that asbestos was present in the workplace prior to be abated during the 1980's. According to Mr. Fenton, the plant was asbestos-free by the late–1980's.

---

7. The Commission is also tasked with determining whether the claim was timely filed, whether the claimant is entitled to the presumption that pulmonary impairment is occupational in nature, and with identifying the responsible employer or employers. W. Va.Code § 23–4–15b (1995).

8. This claim was apparently one of a number of claims involving Fenton Art Glass employees and the employer. Although transcripts are not present in the record before us, reference is made in the testimony of witnesses herein to the testimony of other employees regarding visible dust in the working environment.

In applying our standard of review to the BOR's affirmation of the OOJ order (which, itself, affirmed the Commission's order), we do not believe that the BOR's decision is in clear violation of any constitutional or statutory provision, is clearly the result of any erroneous conclusions of law, or is based upon the BOR's material misstatement or mischaracterization of any components of the evidentiary record. Furthermore, we find no error in the BOR's review, under the standard of review applicable to the BOR, of the OOJ non-medical interlocutory order. We therefore affirm that portion of the BOR's May 30, 2006 order which affirmed the OOJ's September 4, 2003 interlocutory order on the non-medical exposure issue. This issue is largely a factual determination and we will not disturb the factual findings of Judge Haslebacher.

## B.

### The Medical Issue

The medical issue before us regarding the granting of a 5% award to claimant for the diagnosis of occupational pneumoconiosis without pulmonary impairment is whether the BOR erred by violating its statutory standard of review in its consideration of the September 4, 2003, order of the OOJ. We find that it did. Specifically, we find that while the OOJ properly accorded the deference required by West Virginia law to the medical findings and conclusions of the O.P. Board in affirming the Commission's June 18, 1998, order which granted no award, the BOR acted in an arbitrary manner in summarily disregarding such medical findings and conclusions of the O.P. Board. Furthermore, by favoring unreliable medical evidence over reliable medical evidence, the BOR's order was clearly wrong in view of the reliable, probative and substantial evidence of the whole record. As such, we find that the BOR's decision was in clear violation of its statutory standard of review and that its failure to accord proper statutory deference to the medical findings and conclusions of the O.P. Board constitutes an erroneous understanding of the law applicable to the BOR's review.

In considering the question before us, we find the Workers' Compensation Code (*i.e.*, W. Va. § 23–1–1, *et seq.*), as well as our prior decision in *Rhodes v. Workers' Compensation Div.*, 209 W.Va. 8, 543 S.E.2d 289 (2000), to be determinative. " ' " 'The primary object in construing a statute is to ascertain and give effect to the intent of the legislature.' Syllabus Point 1, *Smith v. Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syllabus point 2, *Anderson v. Wood*, 204 W.Va. 558, 514 S.E.2d 408 (1999).' Syllabus point 2, *Expedited Transportation Systems, Inc. v. Vieweg*, 207 W.Va. 90, 529 S.E.2d 110 (2000)." Syl. pt. 1, *Rhodes v. Workers' Compensation Division*, 209 W.Va. 8, 543 S.E.2d 289 (2000). In so doing, we observe two fundamental rules regarding statutory construction. First, to the extent a statute is unambiguous, it is not subject to interpretation. Thus, "where the language of a statutory provision is plain, its terms should be applied as written and not construed." *DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) citing Syl. pt. 5, *Walker v. W. Va. Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). Furthermore, as observed above, "[i]n the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings." Syl. pt. 3, *Hodge*, 172 W.Va. 17, 303 S.E.2d 245; Syl. Pt. 1, *Thomas* 164 W.Va. 763, 266 S.E.2d 905. Second, we observe that there are several statutory provisions in the Workers' Compensation Code (*i.e.*, W. Va.Code § 23–1–1, *et seq.*) applicable to the question before us. " 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 3, *Boley v. Miller*, 187 W.Va. 242, 418 S.E.2d 352 (1992).

The facts applicable to the medical issue in this case are straight forward. Claimant received a full physical examination, including history, pulmonary function studies and chest x-rays from the members of the O.P. Board. Only the members of the

O.P. Board performed such a full and detailed examination of claimant. In addition, the chest x-rays of claimant obtained by the O.P. Board were re-read by five additional radiologists: Drs. Gaziano and Dr. Aycoth, at the request of claimant, and Drs. Willis, Sparks and Smith, at the request of the employer. An additional chest x-ray film of claimant from Parkersburg Radiology Services was read by Dr. Bassali, at the request of the claimant, and by Drs. Willis, Sparks and Smith, at the request of the employer. A final hearing was held thereafter at which time the O.P. Board considered all of the evidence of record, performed an actual re-read and comparison of all chest x-rays of record on a view box during the hearing, and was cross-examined by the parties. No other physicians appeared to give testimony or be subject to cross-examination at this final hearing.

The testimony of the O.P. Board regarding its consideration of the medical evidence of record was thorough and definitive. The members of the O.P. Board gave specific, detailed reasons for finding that the x-ray readings of Drs. Bassali, Aycoth and Gaziano were not reliable from a medical standpoint. Most importantly, Dr. Leef posted the x-ray films on a view box during the final hearing and physically looked for the purported changes relied upon by Drs. Bassali, Aycoth and Gaziano in making their conclusions. The purported changes relied upon by claimant's physicians simply were not present. Furthermore, Dr. Leef testified that it was good practice in considering a diagnosis to have the benefit of as many x-rays as possible. None of claimant's physicians reviewed and compared all of the x-rays. In addition to the members of the O.P. Board, all of the employer's physicians performed such a review. With respect to the medical unreliability of the reports of Drs. Bassali, Aycoth and Gaziano, and the lack of a confirmable diagnosis of occupational pneumoconiosis, the members of the O.P. Board were unanimous.

In his consideration of the record on the medical issue, Judge Haslebacher thoroughly reviewed the evidence of record, the applicable law, and, most importantly, the specific findings and conclusions of the O.P. Board on the medical issues in this claim. He affirmed the Commission's June 18, 1998, finding of the lack of a diagnosis. A review of the BOR's May 30, 2006, order on the medical issue reveals no such apparent thorough review of the record, much less a consideration of the specific findings and conclusions of the O.P. Board on the medical issues. Equally missing from the BOR's order is any analysis of the law, especially with regard to the deference to be accorded to the findings and conclusions of the O.P. Board on medical issues, applicable to the medical issues herein.[9]

In *Rhodes*, we reviewed not only the importance of the role of the O.P. Board in medical determinations of awards for occupational pneumoconiosis, but also the deference required by West Virginia law for findings and conclusions of the O.P. Board on medical issues:

First, we note that the OP Board plays an integral role in the decision of an OP claim: "[t]he function of the board is to determine *all* medical questions relating to cases of compensation for occupational pneumoconiosis under the direction and supervision of the commissioner." W. Va.Code § 23–4–8a (1999) (Supp.2000) (emphasis added). *See also Newman v. Richardson,* 186 W.Va. 66, 69–70, 410 S.E.2d 705, 708–09 (1991) ("Because the Occupational Pneumoconiosis Board is composed of doctors who have 'by special study or experience, or both, acquired special knowledge of pulmonary diseases' (W. Va.Code, 23–4–8a, [1974] ), the Board is to determine all medical questions in an occupational pneumoconiosis claim under the direction and supervision of the Commissioner. *Ferguson v. State Workmen's Compensation Com-*

9. Indeed, one is left to ponder if the BOR simply substituted its judgment for that of the O.P. Board on the medical matters at issue and blindly elevated reports making the highest recommendations for an award to the basis of their faulty conclusion with no consideration whatso-ever to the considerable deference required by West Virginia law to the medical findings of conclusions of the O.P. Board, no consideration to the BOR's proper standard of review, and no consideration to the reliable medical evidence of record.

*missioner*, 152 W.Va. 366, 163 S.E.2d 465 (1968)." (footnote omitted)).

Furthermore, the Division and the OOJ are mandated, in W. Va.Code § 23–4–6a (1995) (Repl.Vol.1998), to give substantial weight to the OP Board's determination of a claimant's degree of medical impairment:

> If an employee is found to be permanently disabled due to occupational pneumoconiosis, as defined in section one [§ 23–4–1] of this article, *the percentage of permanent disability shall be determined by the degree of medical impairment that is found by the occupational pneumoconiosis board.* The division shall enter an order setting forth the findings of the occupational pneumoconiosis board with regard to whether the claimant has occupational pneumoconiosis and the degree of medical impairment, if any, resulting therefrom. That order *shall* be the final decision of the division for purposes of section one [§ 23–5–1], article five of this chapter. If such a decision is objected to, the office of judges *shall affirm* the decision of the occupational pneumoconiosis board made following hearing unless the decision is clearly wrong in view of the reliable, probative and substantial evidence on the whole record.

209 W.Va. at 14, 543 S.E.2d at 295 (emphasis in original) (internal footnotes omitted).[10]

 In reviewing the statutory language applicable to the medical issue herein, it is and has been the function of the OP Board to determine *all* medical questions relating to cases of compensation for occupational pneumoconiosis. W. Va.Code § 23–4–8a (2005). *Rhodes*, 209 W.Va. at 14, 543 S.E.2d at 295. Furthermore, "the percentage of permanent disability is determined by the degree of medical impairment that is found by the occupational pneumoconiosis board." W. Va.Code § 23–4–6a (2005). Finally, should exception be taken to the medical findings and conclusions of the O.P. Board, provision has been made for a final hearing at which time all medical evidence may be considered and the O.P. Board shall submit to examination and cross-examination. W. Va.Code § 23–4–8c(d) (2005). In reviewing such exceptions, the "office of judges *shall affirm the decision of the occupational pneumoconiosis board made following hearing unless the decision is clearly wrong* in view of the reliable, probative and substantial evidence of the whole record." W. Va.Code § 23–4–6a (2005)(emphasis added). The word "shall" is mandatory. *See State v. Allen*, 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999).

 The Legislature has clearly conveyed its intention through such statutory language that the O.P. Board is to be accorded considerable deference on medical matters related to the diagnosis and, if any, impairment related to occupational pneumoconiosis. Because the O.P. Board is charged with determining *all* medical questions relating to occupational pneumoconiosis cases, and because of the substantial deference afforded to the O.P. Board in connection with occupational pneumoconiosis cases, the party challenging the O.P. Board's findings and conclusions bears the burden of establishing through competent and reliable evidence that such findings and conclusions are clearly wrong. W. Va.Code § 23–4–6a (2005). *See Rhodes*, 209 W.Va. at 16–17, 543 S.E.2d at 297–298; *Whitt v. State Workmen's Compensation Commissioner*, 153 W.Va. 688, 693–694, 172 S.E.2d 375, 377–378 (1970). Here, as amply found by Judge Haslebacher, the claimant did not meet his burden with competent, reliable medical proof.

A decision by the OOJ should not be reversed by the BOR unless the findings upon which that decision is based are in violation of statutory provisions; in excess of the stat-

---

10. In *Rhodes*, we noted that changes had occurred to certain of the applicable statutes after claimant had filed his claim seeking occupational pneumoconiosis benefits. However, we noted that such changes, such as changing "shall be" to "is" in W. Va.Code § 23–4–8a in 1999 ("The function of the board *shall be* to determine all medical questions ..."), do not materially change the meaning of the quoted language. The language in W. Va.Code § 23–4–6a was also changed in a non-material manner from "shall be" to "is" ("... the percentage of permanent disability *shall be* determined by the degree of medical impairment that is found by the occupational pneumoconiosis board."). *Rhodes*, 209 W.Va. at 14, n. 7, 543 S.E.2d at 295, n. 7.

utory authority or jurisdiction of the OOJ; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or is arbitrary or capricious or characterized by abuse of discretion or is clearly an unwarranted exercise of discretion. W. Va.Code § 23–5–12 (2005). The BOR is required to review rulings from the OOJ under this standard, and failure to do so constitutes reversible error. Syl. Pt. 6, *Conley v. Workers' Compensation Div.*, 199 W.Va. 196, 483 S.E.2d 542 (1997).

Here, on the medical issue, the BOR improperly substituted its judgment for that of the O.P. Board and the OOJ on a medical issue of fact which was thoroughly supported not only by the testimony and findings of the O.P. Board, but also from Judge Haslebacher's thorough decision. Not only was this action arbitrary, it completely ignored the statutory standard of review which the BOR *must* follow. Furthermore, by relying on medically unreliable evidence over reliable medical evidence in the record, the BOR made a conclusion which was clearly wrong in view of the reliable, probative and substantial evidence of the whole record. As such, we find that the BOR's decision was in clear violation of its statutory standard of review and that its failure to accord proper statutory deference to the medical findings and conclusions of the O.P. Board derives from its erroneous conclusion of the law applicable to medical findings in occupational pneumoconiosis cases. Accordingly, we reverse that portion of the BOR's May 30, 2006, order which reversed the OOJ's December 15, 2003, order, and which granted claimant a 5% permanent partial disability award for occupational pneumoconiosis without pulmonary impairment.

## IV.

## CONCLUSION

For the reasons set forth herein, that portion of the May 30, 2006, order of the Workers' Compensation Board of Review which affirmed the interlocutory order of the Workers' Compensation Office of Judges dated September 4, 2003, is affirmed. That portion of the said May 30, 2006, order which re-

versed and vacated the final order of the Office of Judges dated December 15, 2003, and granted claimant a 5% permanent partial disability award of the diagnosis of occupational pneumoconiosis without pulmonary impairment, is reversed and remanded with instructions to reinstate the December 15, 2003, order of the Office of Judges which granted claimant no award.

Affirmed, in Part, Reversed, in Part, and Remanded with Directions

Justices STARCHER and ALBRIGHT concur, in part, and dissent, in part, and reserve the right to file separate opinions.

STARCHER, J., concurring, in part, and dissenting, in part.

I concur with the majority opinion's conclusion in Section III.A. to affirm the order of the Office of Judges on the non-medical issue—although it must be pointed out that this conclusion is nothing more than a Pyrrhic victory for workers' compensation claimants in West Virginia.

I dissent to the remainder of the majority's opinion, including much of the reasoning in Section III.A., because it radically rewrites some forty years of occupational pneumoconiosis law—and in doing so, completely dispenses with notions of fairness and due process in the adjudication of pneumoconiosis claims. Sadly, this *per curiam* case now sets a disheartening precedent for unfairly resolving other similarly-situated workers' compensation cases.

Let me begin with the majority opinion's resolution of the non-medical issues in this case. *W. Va.Code*, 23–4–8c(b) [2005] says that if a claimant has a respiratory impairment, and the claimant can show he or she was exposed to minute particles of dust in abnormal quantities in the workplace for at least ten of the fifteen years preceding the claimant's date of last exposure to workplace dust, then the claimant is entitled to a rebuttable presumption that the respiratory impairment is the result of occupational pneumoconiosis. See Syllabus Point 1, *Meadows v. Workmen's Compensation Commissioner*, 157 W.Va. 140, 198 S.E.2d 137 (1973).

The purpose behind the Legislature's adoption of this law in 1969 (and its subsequent re-enactment over the years) is a recognition that, oftentimes, miners and others working in dusty conditions suffer from an occupational pneumoconiosis that cannot be detected by x-rays or other diagnostic techniques. The delicate tissue in a worker's lungs is scarred and damaged by dust, but the only objective symptom of the disease is shortness of breath. It is not until after the worker dies—and, unfortunately, often long after the worker has been denied any type of compensation for lack of x-ray evidence—that an autopsy reveals extensive silicosis, black lung or some other form of pneumoconiosis. To remedy this problem, the Legislature adopted the statutory presumption in *W. Va.Code*, 23–4–8c(b) so that, even in the absence of radiographic evidence of disease, a worker with breathing impairment and a substantial work-related exposure to dust can still receive workers' compensation.

The claimant in this case worked at a glass plant, and testified to some twenty years of working in dusty conditions where he could breathe in hazards like sand, soda ash, glass dust and asbestos. The claimant in this case was routinely exposed to abnormal quantities of minute particles of dust at work—that is, more dust than the claimant routinely encountered in his home, church, grocery store or other facet of life—for ten of the fifteen years preceding his 1997 date of last exposure. The majority opinion therefore rightly concludes that the claimant in this case was entitled to the statutory presumption in *W. Va.Code*, 23–4–8c(b) that, if he has any chronic breathing impairment, then that impairment is presumed to be caused by occupational pneumoconiosis.

While I agree with this conclusion by the majority, I must also point out that this victory for the claimant is meaningless, because *the claimant in this case doesn't have any evidence of a chronic breathing impairment.*

Which brings me to my reasons for dissenting. The majority opinion's reasoning leading up to its meaningless conclusion regarding the non-medical presumption is, in fact, a vehicle for gutting a claimant's right to due process in the resolution of a workers' compensation claim. The remainder of Section III.A.—and in fact most of the majority opinion's discussion—is dedicated to quietly eviscerating any standards of fairness for the parties in an occupational pneumoconiosis claim. The opinion strips the administrative law judges working in the Office of Judges and on the Board of Review of any real authority or power to be fair; instead, they must follow the testimonial whims of one witness called the Occupational Pneumoconiosis Board.

Let me explain my dissent by pointing out several axioms in workers' compensation law. First, there are three parties to a compensation claim: the claimant, the claimant's employer, *and* the Commission that oversees the administration of the compensation system.

Furthermore, the Legislature has laid out, in great length, a statutory scheme in workers' compensation cases that states the obvious: all three parties in a workers' compensation claim are entitled to have the injured claimant examined by a doctor. *W. Va.Code*, 23–4–8 [2005] says that "the claimant and employer, respectively, each have the right to select a physician of the claimant's or the employer's own choosing and at the claimant's or the employer's own expense[.]" But in addition to the claimant and the employer, the Commission is also entitled to a medical examination of the claimant. In cases other than occupational pneumoconiosis, *W. Va. Code*, 23–4–8 says that the Commission may, "whenever in its opinion it is necessary, order a claimant of compensation for a personal injury *other than occupational pneumoconiosis* to appear for examination before a medical examiner or examiners selected by the commission[.]" (Emphasis added.)

In cases of occupational pneumoconiosis, the Commissioner has the discretion (but is not required) to refer a claimant to a panel of medical examiners called the Occupational Pneumoconiosis Board ("the O.P. Board"). *W. Va.Code*, 23–4–8 says that "[i]f the compensation claimed is for occupational pneumoconiosis, the commission ... may ... whenever in the commission's opinion it is necessary, order a claimant to appear for examination before the occupational pneumoconiosis board provided for in section eight-a

[§ 23–4–8a] of this article." *W. Va.Code*, 23–4–8a [2005] establishes the O.P. Board as a panel of five physicians "with special knowledge of pulmonary diseases" who are charged with "determin[ing] all medical questions relating to cases of compensation for occupational pneumoconiosis ... under the direction and supervision of ... the insurance commissioner."

Reading these statutes *in pari materia*, the *fair* conclusion is that the O.P. Board is simply a panel of expert witnesses who provide guidance to the Commission on medical questions in pneumoconiosis cases.

The O.P. Board is *not* an adjudicatory body, nor is the O.P. Board an investigatory unit or "fact-finder" in any sense of the word. Instead, the O.P. Board is a gaggle of fact witnesses charged with conducting expert examinations of claimants with occupational pneumoconiosis, and providing professional guidance to assist the Commission or other adjudicatory body in making a compensation-related decision.

But I dissent because the majority's opinion elevates the O.P. Board from the status of expert witnesses offering an opinion to the status of virtually unchallengeable judge and jury as well. The majority opinion, with little citation to authority, let alone regard for constitutional notions of fairness, elevates the testimony of one class of witness in occupational pneumoconiosis claims to a higher plane above all other witnesses. As the majority opinion at one point states:

> We observe that the O.P. Board is not only a board comprised of experts in the field of occupational pneumoconiosis, but also that the O.P. Board's members are *presumptively impartial*. Accordingly, we believe that *great deference* should be given to the conclusions of the O.P. Board....

222 W.Va. at 428, 664 S.E.2d at 769 (emphasis added). At another point, the majority opinion declares that

> ... because of the *substantial deference* afforded to the O.P. Board in connection with occupational pneumoconiosis cases, the party challenging the O.P. Board's findings and conclusions bears the burden of establishing through competent and reliable evidence that such findings and conclusions are clearly wrong.

222 W.Va. at 431, 664 S.E.2d at 772 (emphasis added).

Contrary to the majority opinion's statement, the O.P. Board is not "presumptively impartial" nor is the O.P. Board's opinion entitled to "great deference" or "substantial deference" when compared to the opinions proffered by the claimant's and employer's experts. To hold otherwise is to ignore any sense of balance or fairness in the adjudication of workers' compensation claims. This Court would never hold that only a claimant's expert is presumptively impartial, or that only an employer's expert is entitled to great deference; yet the majority opinion declares just such a lofty status for the Commission's expert in pneumoconiosis claims.

Furthermore, the majority's opinion creates an unattainable evidentiary burden for the claimant and employer. In this case, the majority opinion declares that the claimant bore the burden of showing the O.P. Board was clearly wrong, and finds that the administrative law judge amply found that "the claimant did not meet his burden with competent, reliable proof." As the majority opinion details, the claimant had three radiologists who found x-ray evidence of pneumoconiosis. But the single radiologist for the O.P. Board gave the opinion that "[t]he purported [x-ray] changes relied upon by the claimant's physicians simply were not present," and then the entire O.P. Board took that opinion one step further and gave a unanimous opinion "[w]ith respect to the medical unreliability of the reports of Drs. Bassali, Aycoth and Gaziano." 222 W.Va. at 430, 664 S.E.2d at 771.

Read literally, the majority's opinion creates an impossible, Catch–22 situation for litigants. The majority opinion posits that the only way to overrule an opinion of the O.P. Board is to introduce competent and reliable evidence showing that the O.P. Board's opinion was clearly wrong. But the majority opinion also makes it clear that it is the O.P. Board—and not the fact-finding judge—who is charged with deciding what evidence is competent and reliable. This is absurd. Nowhere else in our legal system would we hold that a witness has the incontrovertible power, as a matter of law, to displace a judge's authority and declare his

own statements to be reliable and declare that an opposing witness's statements are not. Yet that is exactly what the majority opinion holds that the members of the O.P. Board can do in the context of occupational pneumoconiosis claims.

I concede that the majority bases its reasoning, in part, upon *W. Va.Code*, 23–4–6a [2005], which states that an administrative law judge "shall affirm" a determination by the O.P. Board unless the determination is "clearly wrong" in view of the "reliable, probative and substantial evidence" in the record. The flaw in the majority's reliance upon this statute is two-fold. First, the majority opinion goes so far as to hold that the O.P. Board is the arbiter of whether it is "clearly wrong," by empowering the O.P. Board to declare evidence that conflicts with the O.P. Board's theory to be "unreliable" or "not probative." Second, the majority opinion wholly ignores constitutional notions of fairness and due process: the opinion illogically suggests that the Legislature has created an adversarial, administrative law process where the party objecting to the O.P. Board's decision—claimant or employer—cannot ever win.

I suppose that I could presume that the administrative law judges at the Office of Judges will assert some independence and authority to determine the reliability and competency of a witness's statements separate from the declarations of the O.P. Board, but I know from years of experience that is not likely to happen.[1] I could also take heart in the fact that the majority's opinion is a *per curiam* opinion that contains no new statements of law, but I know that the flawed reasoning of the opinion will be vigorously applied to strip all remaining semblance of due process from the administration of occupational pneumoconiosis claims.

**1.** I do not live in a sterile bubble. I understand—from reviewing thousands upon thousands of claims appealed to this Court—that for many decades, and totally contrary to the rule of liberality, the O.P. Board administrative process has been unfairly skewed such that workers' compensation administrative law judges automatically adopted the opinions of the Board, no matter how ridiculous or contrary to law, and no matter how many contrary medical opinions were offered. I also understand that the Legislature adopted the "clearly wrong" language into *W. Va.Code*, 23–4–6a in 1995 at the insistence of

Claimants and employers who are on the losing end of the majority's opinion may want to pursue developing a record showing the unconstitutional nature of the existing occupational pneumoconiosis adjudication system.[2] Perhaps, in future years, a majority of the members of this Court will choose to inject fairness and balance into the heart of the workers' compensation administrative law process.

The best solution would be for the Legislature to take notice of the drastic unfairness that is, *sub silentio*, created by the majority's opinion and craft a legislative solution that equally balances the interests of claimants, employers and the Commission in occupational pneumoconiosis claims.

I therefore respectfully concur, in part, and dissent, in part, to the majority's opinion.

I am authorized to state that Justice Albright joins in this opinion.

lobbyists for employers, as a means of enshrining into law this pre-existing skewed administrative process.

**2.** There is one other point that bears mentioning: in the instant case, the claimant filed his claim in 1997, and now, eleven years later, the claim is still being litigated. Yet the majority opinion cites only to statutes adopted by the Legislature in 2005, and gives no consideration to which procedural or substantive law should truly guide the resolution of this particular claim.