# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RANDY D. BOHALL,**
**Claimant Below, Petitioner**

**FILED**
**November 18, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 22-ICA-88**          (BOR Appeal No. 2058140)
                                      (JCN: 2017010501)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Randy D. Bohall appeals the August 10, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Murray American Energy, Inc. filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the decision by the Workers' Compensation Office of Judges ("OOJ") that affirmed the claim administrator's order granting no additional permanent partial disability award for occupational pneumoconiosis ("OP").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' briefs, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Bohall filed a claim for OP in 2016 for which the date of last exposure was December 15, 2013.[2] The claim administrator held the claim compensable for OP by order dated November 16, 2016, and also stated that Mr. Bohall was entitled to the statutory presumption set forth at West Virginia Code § 23-4-8c(b) (2009).[3]

---

[1] Petitioner is represented by J. Thomas Greene, Jr., Esq. and T. Colin Greene, Esq. Respondent is represented by Aimee M. Stern, Esq.

[2] According to the OP Board's findings dated April 4, 2017, Mr. Bohall retired in April 2014.

[3] The statute provides that, when certain criteria are met, it is presumed that a worker's pulmonary impairment is due to his or her occupational exposure. However, the presumption is not conclusive.

On April 4, 2017, the Occupational Pneumoconiosis Board ("OP Board") examined Mr. Bohall. The OP Board determined he had been exposed to a dust hazard while working as an underground coal miner and mechanic for twenty years and as a surface coal miner/mechanic/electrician for three years. The OP Board found that the chest x-ray was negative and did not establish a diagnosis of pneumoconiosis. The OP Board noted mild wheezing and that he had been diagnosed with COPD. The pulmonary function study indicated that Mr. Bohall had a smoking history of one-half of a pack of cigarettes per day for twenty years. Based upon the pulmonary function study and the examination, the OP Board diagnosed OP with 15% pulmonary function impairment attributable to the disease. The claim administrator issued an order dated May 24, 2017, granting a 15% permanent partial disability ("PPD") award based on the OP Board's report.

On August 12, 2019, the claim administrator granted Mr. Bohall's reopening application. Mr. Bohall was again examined by the OP Board on October 6, 2020, and pulmonary function testing was performed. Additionally, the OP Board reviewed a report from East Ohio Regional Hospital dated September 10, 2018, relied upon by Mr. Bohall to reopen the claim. The OP Board noted that Mr. Bohall was diagnosed with COPD and he used bronchodilator medication. Mr. Bohall's cigarette smoking history was reported as 0.8 packs per day for thirty-five years. The chest x-ray showed insufficient pleural or parenchymal changes to establish a diagnosis of pneumoconiosis. The diffusion study was determined to be invalid due to elevated carboxyhemoglobin. After reviewing the record and the testing, the OP Board found sufficient evidence to justify a diagnosis of OP with no more than a 15% pulmonary impairment attributable to the disease, as previously found on April 4, 2017, after taking Mr. Bohall's smoking history into account.

By order dated December 8, 2020, the claim administrator granted no additional PPD in the claim based upon the OP Board's findings dated October 6, 2020, which indicated Mr. Bohall was fully compensated by his previous 15% award.

On January 26, 2022, Mr. Bohall was evaluated by Shawn Posin, M.D., to whom Mr. Bohall reported a diagnosis of COPD, the use of inhalers, and a history of working in coal mines for twenty-six years. Dr. Posin noted Mr. Bohall's "significant smoking history" consisted of smoking one pack of cigarettes per day since age eighteen. Dr. Posin commented that Mr. Bohall had "some periods where he tried to stop" smoking, but he continued to smoke at the rate of one-half to one pack per day.

Dr. Posin performed a pulmonary function study and found it was consistent with a diagnosis of a mild obstructive defect and a moderate reduction in diffusion. He concluded that the FEV1/FVC revealed 40% impairment. He also found a marked decrease in diffusion capacity, although the report noted a "high" carboxyhemoglobin measurement at 5.6. Taking into account his smoking history, Dr. Posin attributed 30% impairment to Mr. Bohall's occupational exposure. A chest x-ray performed at this visit was negative.

The OP Board members Jack Kinder, M.D., Johnsey Leef, M.D., and Bradley Henry, M.D. testified at a hearing before the Office of Judges on February 2, 2022. Dr. Leef testified that the chest x-rays dated October 6, 2020, and April 20, 2017, were of good quality and did not show evidence of OP. He observed there was some hyperinflation on the most recent x-ray, which was consistent with COPD. Dr. Kinder reviewed pulmonary function studies dated October 6, 2020, April 4, 2017, and January 26, 2021. He stated the study with the best or highest "overall volumes" was the one performed on October 6, 2020, and it demonstrated an overall 50% pulmonary impairment based upon the post-bronchodilator ratio. He noted that the post-bronchodilator study revealed a particularly large super volume on the FVC, but the diffusion study was invalid due to the carboxyhemoglobin of 4.0.

Dr. Kinder testified that the volumes from the 2020 study showed a significant improvement in the FVC and FEV1 from the 2017 study. He also stated the OP Board's study in 2020 had better volumes than the study performed by Dr. Posin. In further explaining how the OP Board chose the 2020 study as the basis of its findings, Dr. Kinder said the OP Board uses the best study within a two-year period because that represents the true impairment. He testified that OP is an irreversible disease, and the test with the highest volumes represents a person's best performance.

According to Dr. Kinder, the OP Board attributed the pulmonary impairment beyond 15% to Mr. Bohall's thirty-five years of smoking at the rate of 0.8 packs per day. Dr. Kinder also observed that Mr. Bohall continued to smoke. Mr. Bohall did not question the OP Board about the smoking history or any discrepancies between the three reports concerning the smoking history. After reviewing all of the studies, Dr. Kinder said he felt that 15% impairment was appropriate, and Dr. Henry concurred. Given that the volumes in the recent test were better than in the prior testing, and there was no change seen on the x-ray, Dr. Kinder testified that the OP Board did not find a reason to increase the impairment recommendation for the claim.

On May 25, 2022, the OOJ issued a decision affirming the claim administrator's order that granted no additional PPD and found Mr. Bohall had been fully compensated by the prior 15% PPD award. The OOJ found that Mr. Bohall did not establish that the OP Board was clearly wrong in concluding he was fully compensated by his prior 15% award. It noted that the study by Dr. Posin did not demonstrate the best volumes. Mr. Bohall appealed the OOJ's decision. On August 10, 2022, the Board issued an order affirming the OOJ's decision and adopting the OOJ's findings of fact and conclusions of law, except for a few non-consequential, typographical errors. It is from the Board's order that Mr. Bohall now appeals.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;

(2) In excess of the statutory authority or jurisdiction of the Board of Review;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Mr. Bohall argues that the Board erred in adopting the incorrect testimony and findings of the OP Board. Specifically, Mr. Bohall alleges that Dr. Kinder testified that the pulmonary function study performed on October 6, 2020, had the best volumes and it demonstrated a 50% pulmonary function impairment based upon the post-bronchodilator FEV1/FVC ratio. He contests Dr. Kinder's opinion that the more recent test, revealing 50% overall impairment, constituted an "improvement" in volumes compared to the testing performed in 2017, which revealed a 40% overall impairment. He also contests the OP Board's assignment of the remaining 35% impairment to his smoking history. Mr. Bohall cites syllabus point 1 of *Javins v. Workers' Compensation Commissioner*, 173 W. Va. 747, 320 S.E.2d 119 (1984), which states that

[w]hen conflicting medical evidence is presented concerning the degree of impairment in an occupational pneumoconiosis claim, that medical evidence indicating the highest degree of impairment, which is not otherwise shown, through explicit findings of fact by the Occupational Pneumoconiosis Board, to be unreliable, incorrect, or clearly attributable to some other identifiable disease or illness, is presumed to accurately represent the level of pulmonary impairment attributable to occupational pneumoconiosis.

*Id.* Mr. Bohall asserts that he established a thirty-seven-year history of occupational exposure to dust hazards, whereas his smoking history was less. He alleges that Dr. Kinder and the OP Board incorrectly assigned 35% of the pulmonary impairment to a smoking history of 0.8 packs of cigarettes per day for thirty-five years instead of the twenty-year smoking history at the rate of one-half of a pack per day, as it found only three years earlier in its 2017 testing. Thus, he argues the assignment of more than two-thirds of his overall impairment to a smoking history was improper. Further, he argues that Dr. Kinder did not specifically diagnose any disease process to which he attributed the remaining 35% impairment.

4

Mr. Bohall contends the study and findings of Dr. Posin should have been adopted because he found the highest degree of impairment and considered the smoking history and the occupational dust exposure. According to Mr. Bohall, Dr. Posin's recommendation of 30% impairment for OP (after assigning 10% to the smoking history) was reliable and was more in keeping with his entitlement to the statutory presumption applicable to his case. Mr. Bohall alleges that the OP Board reduced his award by more than half based upon "conjecture regarding other diagnoses." Thus, Mr. Bohall asserts that the evidence weighs in favor of finding he has experienced a progression of impairment and Dr. Posin found the highest degree of impairment through his reliable testing.

In reviewing this case, we note that West Virginia Code § 23-4-6a (2005) provides, in pertinent part:

> If an employee is found to be permanently disabled due to occupational pneumoconiosis, as defined in section one of this article, the percentage of permanent disability is determined by the degree of medical impairment that is found by the occupational pneumoconiosis board. The commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall enter an order setting forth the findings of the occupational pneumoconiosis board with regard to whether the claimant has occupational pneumoconiosis and the degree of medical impairment, if any, resulting therefrom. That order is the final decision of the commission for purposes of section one, article five of this chapter. **If a decision is objected to, the office of judges shall affirm the decision of the Occupational Pneumoconiosis Board made following hearing unless the decision is clearly wrong in view of the reliable, probative and substantial evidence on the whole record.**

*Id.* (emphasis added). As stated by the Supreme Court of Appeals in *St. Clair v. West Virginia Office of Insurance Commissioner,* No. 20-0535, 2021 WL 4936478, at *3 (W. Va. Oct. 4, 2021) (memorandum decision), "[t]his Court has long recognized that, pursuant to the provisions of West Virginia Code §§ 23-4-6a, 23-4-8, and 23-4-8c(d), the OP Board is to be accorded considerable deference in medical matters. *Fenton Art Glass Co. v. W. Va. Off. of the Ins. Comm'r*, 222 W. Va. 420, 664 S.E.2d 761 (2008)."

We are not persuaded by Mr. Bohall's argument that the OP Board incorrectly reduced its finding of overall impairment based upon mere "conjecture." As Dr. Kinder testified, and as agreed to by Dr. Henry at the hearing before the OOJ on February 2, 2022, the OP Board reduced the overall impairment it found based upon Mr. Bohall's smoking history.

Mr. Bohall notes that his smoking history, as reported in the three pulmonary function studies, varied. He asserts that the smoking history relied upon by the OP Board

resulted in adding fifteen years to his smoking history above the smoking history of twenty years at one-half of a pack per day found by the OP Board only three years earlier in April 2017. However, at the OOJ hearing, Mr. Bohall did not question the OP Board about the variances in his smoking history set forth in the various reports. Similarly, Mr. Bohall did not challenge the OP Board's testimony that its 2020 study had the "best volumes" or that the volumes were better in 2020 than in 2017. Mr. Bohall had the burden of questioning the OP Board if he believed its conclusions rested upon a flawed smoking history. *See* Syl. Pt. 3, *Rhodes v. Workers' Comp. Div.,* 209 W. Va. 8, 543 S.E.2d 289 (2000) (holding West Virginia Code § 23-4-8c(d) requires party objecting to findings and conclusions of OP Board to bear burden of questioning OP Board regarding medical evidence it submitted).

In rating the impairment for OP, the OP Board reduced the overall pulmonary impairment above 15% because of Mr. Bohall's significant smoking history. Similarly, Dr. Posin's report, which Mr. Bohall urges to be adopted by this Court, reduced the overall impairment finding because of a smoking history characterized as "significant." Although Dr. Posin's reduction of 10% from the overall impairment of 40% represented much less of a reduction than the amount reduced by the OP Board, it was based on the same reason that the OP Board reduced the impairment, i.e., a significant smoking history. Thus, Mr. Bohall cannot argue that it was improper to reduce his impairment based on his significant smoking history if he wants the Court to rely upon Dr. Posin's report.

The OP Board's decision, made at the hearing after reviewing Dr. Posin's report, was that Mr. Bohall was fully compensated by his prior 15% PPD award. The OP Board's decision is entitled to deference, whereas Dr. Posin's report is not. The OP Board found the nonconclusive presumption was rebutted by the smoking history but for 15% impairment. The Board and the OOJ were not clearly wrong in relying upon the OP Board findings and testimony. Accordingly, we affirm.

Affirmed.

**ISSUED:** November 18, 2022

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen