# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2025 Term

_____

Nos. 24-ICA-346 and 24-ICA-440

_____

**FILED**

**October 1, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

WADE BOYCE,
Claimant Below, Petitioner,

v.

QUINWOOD COAL COMPANY, LLC,
Employer Below, Respondent,

AND

CHRISTOPHER SARGENT,
Claimant Below, Petitioner,

v.

ALPHA METALLURGICAL RESOURCES, INC.,
Employer Below, Respondent.
_____

Appeals from the West Virginia Workers' Compensation Board of Review

JCN: 2023018621 and 2024003153

VACATED AND REMANDED
_____

Submitted: September 3, 2025
Filed: October 1, 2025

Reginald D. Henry, Esq.              Alysia Kozlowski, Esq.
Lori J. Withrow, Esq.                Charleston, West Virginia
Mabscott, West Virginia             Counsel for Respondents
Counsel for Petitioners

JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

In these consolidated appeals,[1] Petitioners Wade Boyce and Christopher Sargent ("petitioners") appeal the August 6, 2024, and October 7, 2024, orders of the West Virginia Workers' Compensation Board of Review ("Board"), affirming the orders of the Claim Administrator ("CA") denying petitioners' individual claims for occupational pneumoconiosis ("OP"). On appeal, petitioners argue that the Board erred in its determination that petitioners were not exposed to hazardous occupational dust during employment with their respective employers. Upon review of the record, we conclude that the Board failed to analyze all the evidence in the records in both of the underlying cases. Accordingly, we vacate the Board's August 6, 2024, and October 7, 2024, orders and remand both matters to the Board for further proceedings consistent with this opinion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND
*Case No. 24-ICA-346*

On March 27, 2023, Mr. Boyce filed an Employees' Report of OP, which noted that Mr. Boyce was exposed to occupational dust hazards throughout his fifteen-year employment in the coal industry and identified his present employer as Quinwood Coal Company, LLC ("Quinwood"). On March 30, 2023, Mr. Boyce submitted a Physician's Report of OP completed by Richard Spencer, M.D. Dr. Spencer diagnosed Mr. Boyce with pulmonary impairment attributable to OP. On April 11, 2023, Quinwood submitted an

---

[1] These cases were consolidated by this Court's June 3, 2025, order for the purpose of oral argument, consideration, and decision.

1

Employer's Report of OP, which concluded that Mr. Boyce was not exposed to excessive levels of dust based upon multiple Mine Safety and Health Administration ("MSHA") dust samplings completed at the Quinwood mine.

Mr. Boyce submitted the results from his pulmonary function tests dated December 11, 2018, and August 19, 2020, from Pulmonary Associates of Charleston, and January 3, 2023, from New River Health Association, all of which showed a mild pulmonary obstruction. Mr. Boyce submitted a "B reading" by Kathleen DePonte, M.D., in relation to a January 3, 2023, chest x-ray.[2] Dr. DePonte found that Mr. Boyce had no pleural or parenchymal abnormalities consistent with OP. Thereafter, Mr. Boyce testified at an October 4, 2023, deposition, outlining his exposure to dust over his career in the mining industry and at Quinwood. Specific to his employment at Quinwood, Mr. Boyce testified that he was exposed to an occupational dust hazard daily; that he was not provided appropriate breathing protection; and that he had to obtain a respirator from a friend at another coal mine.

Thereafter, Quinwood submitted a report from James McIntosh, Certified Industrial Hygienist, dated March 13, 2024. Mr. McIntosh subsequently testified by deposition on May 5, 2024. Mr. McIntosh testified that he reviewed nine dust samples

---

[2] A "B Reader" is a physician certified by the National Institute for Occupational Safety and Health ("NIOSH") to classify radiographs of pneumoconiosis. NIOSH B Reader Program, U.S. Centers for Disease Control and Prevention (February 24, 2025), https://www.cdc.gov/niosh/chestradiography/php/breader/index.html.

relating to Mr. Boyce's specific job. These dust samples covered from March 31, 2022, through March 31, 2023. Mr. McIntosh opined that the dust samples taken from the Quinwood mine were compliant with the MSHA regulations; that these samples were representative of the dust exposure over the alleged time period; were below the MSHA respirable dust standard; and were collected in compliance with MSHA sampling requirements. However, Mr. McIntosh also testified that there was no way to identify whether any of the samples were actually of Mr. Boyce. Specific to sample collection, Mr. McIntosh testified that MSHA requires that sampling be performed by an individual certified in dust sample collection under the United States Code of Federal Regulations Title 30, Part 70. Mr. McIntosh further testified regarding the process necessary to become a certified dust sampler under MSHA. Lastly, he testified that the MSHA dust sampling records appeared to be valid and representative of Mr. Boyce's employment with Quinwood.

On August 6, 2024, the Board entered its order affirming the CA's order and finding that the employer demonstrated that Mr. Boyce was not exposed to the hazards of dust during his employment at Quinwood. It is from this order that Mr. Boyce now appeals.

*Case No. 24-ICA-440*

On June 20, 2023, Mr. Sargent filed an Employees' Report of OP, which stated that he was exposed to occupational dust hazards throughout his nineteen-year employment in the concrete and coal industries and identified his present employer as

3

Alpha Metallurgical Resources, Inc. ("Alpha"). On August 16, 2023, Mr. Sargent submitted a Physician's Report of OP completed by Dr. Spencer. Dr. Spencer diagnosed Mr. Sargent with pulmonary impairment attributable to OP. Mr. Sargent submitted a "B reading" by Dr. DePonte based on a pulmonary function test dated June 21, 2023, conducted by New River Health Association. Dr. DePonte found that Mr. Sargent had parenchymal abnormalities consistent with OP.

On August 28, 2023, Alpha submitted an Employer's Report of OP, which concluded that Mr. Sargent was not exposed to excessive levels of dust based upon the MSHA required dust sampling results for the Alpha facility at which Mr. Sargent worked. Further, Alpha submitted a report from Mr. McIntosh dated August 7, 2024. Mr. McIntosh testified that he reviewed approximately one hundred and thirty-one dust sampling results for Mr. Sargent from August 23, 2021, to May 25, 2022, and from August 1, 2022, to July 10, 2023. Mr. McIntosh opined that Mr. Sargent was not exposed to hazardous levels of airborne dust during his employment with Alpha, based on the dust sampling result for the respective period of his employment at Alpha as none of the one hundred and thirty-one dust sampling results exceeded the limits established by MSHA.

Mr. Boyce testified at a March 21, 2024, deposition, outlining his exposure to dust over his career in the concrete and mining industries and at Alpha. Specific to his employment with Alpha, Mr. Sargent testified he did not believe the dust samples were representative of the typical conditions in which he worked at Alpha.

4

On October 7, 2024, the Board entered its order affirming the CA's order below and finding that the employer demonstrated that Mr. Sargent was not exposed to the hazards of dust during his employment at Alpha. It is from this order that Mr. Sargent now appeals.

## II.      STANDARD OF REVIEW

Our standard of review as set forth in West Virginia Code § 23-5-12a(b) (2022), in part, states:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*See* Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). Questions of law arising in decisions issued by the Board are reviewed de novo. *Justice v. W. Va. Off. Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012). With these standards in mind, we now address petitioners' arguments on appeal.

5

## III.    DISCUSSION

On appeal, petitioners argue that the Board erred by finding that petitioners were not exposed to the hazards of dust during their employment with their respective employers. We agree, in part, and find, based upon our review of the records below, that the Board did not consider petitioners' evidence of dust exposure in denying petitioners' individual claims.

Under West Virginia Code § 23-4-1(b) (2024), a claimant seeking workers' compensation benefits for OP, like petitioners, must show exposure to the hazards of OP during their employment and contraction of OP. Additionally, the claimant must prove exposure in the State of West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his or her last exposure to such hazards, or for any five of the 15 years immediately preceding the date of his or her last exposure. "In a claim for occupation pneumoconiosis under the Workmen's Compensation Law, a 'hazard,' as contemplated by [West Virginia] *Code* [§] 23–4–1, as amended, exists in any work environment where it can be demonstrat[ed] that there are minute particles of dust in abnormal quantities." Syl. Pt. 3, *Fenton Art Glass Co. v. West Virginia Office of Ins. Comm'r*, 222 W. Va. 420, 664 S.E.2d 761 (2008). Thus, to establish a compensable OP claim, the burden is on the claimant to show exposure to abnormal quantities of dust exposure while in the workplace.

6

In defending a claim for OP, employers may rely upon West Virginia Code of State Rules § 85-20-52.2 (2006) ("section 85-20-52.2"),[3] which states in relevant part:

> If the employer submits credible evidence demonstrating that it has been in compliance with OSHA and/or MSHA permissible exposure levels, as determined by sampling and testing performed in compliance with OSHA and/or MSHA regulations for the dust alleged by the injured worker, then the Commission, Insurance Commissioner, private carrier or self-

---

[3] Prior to the 2006 amendments, section 85-20-52.2 (2004) read:

> If the employer submits credible evidence as part of the application process demonstrating that it has been in compliance with OSHA and/or MSHA permissible exposure levels for the dust alleged by the injured worker, then the Commission shall determine that the dust exposure alleged by the injured worker was not harmful and does not suffice to satisfy the exposure requirement of W. Va. Code Sections 23-4-1(b) and 23-4-15(b) for the period(s) covered by the testing. Periods for which employees can demonstrate by credible evidence that the employer's dust level testing does not accurately reflect changed conditions in the work place may be included by the Commission in the period of dust exposure which the claimant has alleged to be harmful.

The key difference between the 2004 and 2006 versions is the duty of the Board upon submission of evidence regarding compliance with permissible exposure levels. The 2004 version used the mandatory language "shall," where the 2006 version states the board "*may* consider that the dust exposure alleged by the injured worker does not suffice to satisfy the exposure requirements [. . . ]" based off compliance by the employer. (emphasis added).

We note that with regard to the use of the word "may[,]" the Supreme Court of Appeals of West Virginia has long reasoned that

> when the word "may" is used . . . it "generally signifies permission and connotes discretion." *State v. Hedrick*, 204 W. Va. 547, 552, 514 S.E.2d 397, 402 (1999); *see also Weimer-Godwin v. Bd. of Educ. of Upshur Co.*, 179 W. Va. 423, 427, 369 S.E.2d 726, 730 (1988) ("The word 'may' generally should be read as conferring both permission and power, while the word 'shall' generally should be read as requiring action.").

*State ex rel. Devono v. Wilmoth*, 248 W. Va. 654, 664, 889 S.E.2d 736, 746 (2023).

7

insured employer, whichever is applicable, may consider that the dust exposure alleged by the injured worker does not suffice to satisfy the exposure requirements of W. Va. Code §§23-4-1(b) and 23-4-15(b) only for the period(s) covered by the sampling or testing.

However, this regulation does not mandate a decision in favor of the employee, even if all requirements of West Virginia Code § 23-4-1(b) are met. While the wording of section 85-20-52.2 permits credible dust sampling results to be considered as sufficient evidence to defeat liability, this regulation does not serve as an automatic immunity provision for the employer. Rather, as expressly stated in West Virginia Code § 23-4-1(f), a "consideration of all the circumstances" is necessary to determine if a claimant has met his or her burden for establishing a compensable workers' compensation claim. Further, as the West Virginia Legislature expressly stated in West Virginia Code § 23-4-1g(a), in part, "[u]nder no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position." Moreover, in this same provision, the legislature again noted the necessity of "weighing all of the evidence."

Below, in each of the instant cases, the Board found the reports and deposition testimony of the employers' expert, Mr. McIntosh, were credible and admissible for purposes of section 85-20-52.2.[4] Mr. McIntosh testified as an expert regarding the procedure and methodology for air quality sampling and testing at the employers'

---

[4] During oral argument, counsel for Mr. Boyce and Mr. Sargent did not challenge the admissibility of Mr. McIntosh's reports.

respective facilities, and the permissible dust levels. On appeal, petitioners challenge the Board's factfinding and credibility determinations regarding Mr. McIntosh's opinions. We disagree and remind petitioners that this Court has consistently stated that it is not in a position to reweigh the evidence at the appellate stage. *See West Virginia Department of Health and Human Resources Office of Health Facility Licensure and Certification v. Heart 2 Heart Volunteers, Inc. d/b/a Serenity Hills Life Center*, 249 W. Va. 464, 470, 896 S.E.2d 102, 108 (Ct. App. 2023) (citing Syl. Pt. 3, *Frazier v. Ramadan*, 249 W. Va. 170, 895 S.E.2d 25 (2023)).

> [S]ince a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

*Id.* at 470, 896 S.E.2d at 108. Thus, in line with our previous decisions, this Court defers to the Board's findings regarding the admission of evidence, including the testimony and reports of Mr. McIntosh demonstrating compliance with MSHA permissible exposure levels, and find no error in that regard.

While the Board was not clearly wrong in admitting and considering evidence regarding the employers' compliance with MSHA permissible exposure levels, we find error in the Board's failure to consider all of the evidence in the records below. In both of the underlying cases, the Board, in a one sentence finding, summarily ruled in favor

9

of Quinwood and Alpha based on the evidence of exposure levels, offering no analysis of the evidence presented by either petitioner. While certainly compelling, the evidence related to the testing of the exposure levels at the Quinwood and Alpha facilities was but one piece of the evidence presented to the Board for consideration and was not alone dispositive of petitioners' claims.[5] The Board made no credibility determinations and offered no analysis of Mr. Boyce's testimony regarding his exposure to occupational dust on a daily basis, or Mr. Sargent's testimony that the sampling levels were not indicative of the typical work conditions. An analysis of all the evidence submitted in each of these claims must be performed by the Board. Accordingly, we find error and vacate the Board's August 6, 2024, and October 7, 2024, orders and remand these matters to the Board for consideration of all the evidence in the record, and direct that the Board's subsequent orders contain sufficient analysis of the evidence in the record, including evidence submitted by petitioners, to substantiate its findings.

---

[5] Claims of OP are fact-specific cases, in which determinations by the Board will be on a case-by-case basis. Thus, the Board may arrive at different conclusions of compensability based on the evidence placed into the record in each matter. For example, Mr. McIntosh reviewed approximately one hundred and thirty-one dust testing samples for the time period in question regarding Alpha while only reviewing nine samples for the time period in question regarding Quinwood. A further example would be differences in testimony of the claimants. Mr. Boyce testified that he was not provided appropriate safety equipment such as a respirator, while Mr. Sargent testified about a change of regular duties on days he wore sampling devices.

## IV.    CONCLUSION

For the foregoing reasons, we vacate the Board's August 6, 2024, and October 7, 2024, orders and remand both matters to the Board for further proceedings consistent with this opinion.

Vacated and Remanded.